UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

REGINA L. DAYTON and RAY SEWARD,

    Plaintiffs,

v.                                    Case No.:  2:20-cv-307-FtM-38MRM

CITY OF MARCO ISLAND and ERIK BRECHNITZ,

    Defendants.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendants City of Marco Island and Erik Brechnitz's Motion to Dismiss and, Alternatively, Motion to Strike Portions of Plaintiffs' Complaint (Doc. 5) and Plaintiffs Regina Dayton and Ray Seward's response in opposition (Doc. 7).  For these reasons, the Court grants the Motion in part.

## **BACKGROUND**[2]

This is a First Amendment case.  Plaintiffs went to Marco Island's public city council meeting.  On the meeting agenda was a segment called "Citizens' Comments."  During that time, the public can speak about matters not on the agenda.  After waiting in line, Dayton and Seward each went to the podium to make statements about a city councilor (the "Councilor").

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] These are the facts alleged in the Complaint (Doc. 3), which the Court accepts as true.  *Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).  The Court also considers the Marco Island Rules of Procedure for City Council (the "Rules") (Doc. 5-1) because they are referenced in the Complaint, central, and undisputed.  *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

The Councilor provided content for a website that published negative articles about Seward, the local police chief, and city council members along with candidates running for council seats. In the past, the Councilor made conflicting statements about his connection to the website. So Plaintiffs wanted to comment on the Councilor. Yet when Dayton spoke, Brechnitz (the city council chairperson presiding over the meeting) interrupted. Brechnitz told Dayton she could not speak about the Councilor and her comments were limited to policy issues. While Dayton tried to explain her statements and how they affected other residents, Brechnitz prevented Dayton from speaking. Later, Seward tried to speak on the same topic. But he fared no better, and Brechnitz stopped Seward from speaking.[3]

Plaintiffs filed a one-count complaint under 42 U.S.C. § 1983, alleging Brechnitz and Marco Island violated their First Amendment right to free speech. Now, Defendants move to dismiss.

## LEGAL STANDARD

Motions to dismiss for failure to state a claim follow the familiar Rule 12(b)(6) standard. A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[3] The Complaint lists a URL for videos of city council meetings, but that page does not have any. Without clear direction on where to find the recording, the Court relies on the allegations, not video of the meeting.

**DISCUSSION**

Each Defendant moves to dismiss the claim for separate reasons. The Court addresses both arguments in turn before tackling the motion to strike.

**A. Qualified Immunity**

To start, Brechnitz argues qualified immunity protects him from this suit. Yet—on these allegations—the Court cannot conclude he is entitled to immunity at this time.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). While broad, even qualified immunity has limits. It does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate [plaintiff's] constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (emphasis and citation omitted).

To enjoy qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (internal quotation marks and citation omitted). If successful, the burden shifts for the plaintiff to make two showings. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). Plaintiff must show (1) "the official's alleged conduct violated a constitutionally protected right" and (2) "the right was clearly established at the time of the misconduct." *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016).


Here, Plaintiffs concede Brechnitz acted within the scope of his discretionary authority. (Doc. 7 at 3). So it is Plaintiffs' burden to overcome qualified immunity. According to Plaintiffs, Brechnitz violated the Rules by not allowing them to speak at the meeting. So as the argument goes, Brechnitz violated their First Amendment rights.

Of course, the First Amendment protects the right to free speech and expression. U.S. Const. amend. I. But that right "is not absolute." *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). The "First Amendment does not guarantee persons the right to communicate their views 'at all times or in any manner that may be desired.'" *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989) (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981)). To decide challenges of government restrictions over speech on government property, courts use forum analysis. *E.g., Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115, 1121 (M.D. Fla. 2019).

A city council meeting is typically a limited public forum. *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 802 (11th Cir. 2004); *Cleveland v. City of Cocoa Beach, Fla.*, 221 F. App'x 875, 878 (11th Cir. 2007); Rodney A. Smolla, *1 Smolla & Nimmer on Freedom of Speech*, § 8:38 (2020) (collecting cases). This forum "exists where a government has reserved [it] for certain groups or for the discussion of certain topics." *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1224 (11th Cir. 2017) (alteration accepted) (quoting *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250 (2015)). A limited public forum, therefore, is not "open to the public at large for discussion of any and all topics." *Id.* Rather, it "can be set up to grant only 'selective access' to [the] class" for which it is reserved. *Id.* (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679-80 (1998)). In other words, the government can discriminate based on content,

so long as the restriction is viewpoint neutral and reasonable. *Id.* at 1225; *Sheets*, 415 F. Supp. 3d at 1122-24.

It is crucial to juxtapose the broader city council meeting and the narrower Citizens' Comments portion. *See Barrett*, 872 F.3d at 1224 n.9 (limiting the analysis to only the public-comment session of a meeting as it was "the particular part of the forum to which the would-be speaker has sought access"). Plaintiffs tried to speak during the Citizens' Comments segment. Every city council meeting must include two Citizens' Comments sessions "for matters not included on the agenda"—one for a half hour at 6 p.m. and another "following the regular business of City Council." Rule § 2(b), (f); (Doc. 5-1 at 4-5). Under Rule § 7(c)(2), "The public shall: . . . Be encouraged to address City Council on any subject matter not scheduled on the agenda during the Citizens' Comments section of the agenda." (Doc. 5-1 at 12). Nothing in these sections contemplates any limitation on the subjects citizens may address during that time.

Still, Brechnitz argues he is "permitted to limit Plaintiffs' speech during the public comment portion to certain topics." (Doc. 5 at 9). For support, Brechnitz points to a separate section of the Rules that governs Public Hearings:

> The purpose of Public Hearings is to receive input from citizens regarding matters before City Council. Public hearings are held for ordinances, variances, conditional uses, budgets, utility rate changes, and as otherwise determined by City Council.

Rule § 6; (Doc. 5-1 at 8). But nothing in the plain language of that section (or any other) limits Citizens' Comments only to those topics. In other places, the Rules distinguish between those distinct parts of a city council meeting. Rule § 7(b)(8); (Doc. 5-1 at 11). And Public Hearings have their own public comment session. Rule § 6(a)-(d); (Doc. 5-1

at 8-9). Telling, the section permitting Citizens' Comments only requires use of the Public Hearings' procedure; it does not limit the content of Citizens' Comments to the topics of Public Hearings. Rule § 7(c)(1)-(2); (Doc. 5-1 at 12). Plaintiffs also allege it is common practice for Citizens' Comments to address city councilors, even by name. Contrary to Brechnitz's contention, the Rules contemplate citizens mentioning individual councilmembers—in doing so, the Rules refer to the section permitting Citizens' Comments. Rule § 7(b)(8); (Doc. 5-1 at 11 ("If a Councilor is mentioned by name, the Chair will ask the Councilor if he or she would like to respond. See Section 7(c)(3) below.")). Finally, the Complaint alleges Brechnitz later admitted his actions overstepped his authority under the Rules by preventing Plaintiffs' speech. The Rules taken along with the allegations, therefore, suggest Plaintiffs were not speaking on a topic outside the scope of the Citizens' Comments session.

Brechnitz points at two Eleventh Circuit cases, which are inapposite. In *Rowe*, the Eleventh Circuit considered a facial challenge to city council rules limiting public comment to residents speaking on legitimate matters of general public concern. 358 F.3d at 802-03. The Court held the rule was not overbroad because the city council could restrict the speakers and topics in the limited public forum of a council meeting. *Id.* This case is different. The Rules do not limit Citizens' Comments to any particular topics and Plaintiffs were not speaking outside the scope of the forum. Likewise, in *Cleveland*, the Eleventh Circuit held no First Amendment violation when a city council meeting prohibited all campaign messages related to an ongoing mayoral race. 221 F. App'x at 878-80. The Court reasoned the restriction was both reasonable and viewpoint neutral, so it withstood

limited-public-forum scrutiny.  *Id.*  Again, this case differs.  The Complaint is enough to support a plausible allegation of viewpoint discrimination.

The Rules open the door to public comment on "any subject matter not scheduled on the agenda."[4]  Rule § 7(c)(2); (Doc. 5-1 at 12).  Once the government allows speech on a certain topic in a limited public forum, it cannot bar speakers based on the viewpoint.  *E.g.*, *Barrett*, 872 F.3d at 1225 & n.10 ("Although a limited public forum may rightly limit speech at the forum to only certain content, the First Amendment does not tolerate viewpoint-based discrimination against speech within the scope of the forum's subject matter.").  Viewpoint discrimination is "when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."  *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

Here, the Complaint alleges it is common for Citizens' Comments to remark on city councilors.  During that session, Plaintiffs sought to criticize the Councilor's conduct, which was allegedly relevant to the city council and presumably not on the agenda.  The Rules appear to allow for such comments so long as the citizen exercises decorum.  And Plaintiffs allege they were "peaceful" and did not intend "to incite or attack anyone."  (Doc. 3 at 4).  Yet when Plaintiffs started speaking, Brechnitz prevented any speech about the Councilor and limited all comment to "policy issues."  (Doc. 3 at 3). Later, Brechnitz admitted he violated the Rules by not allowing Plaintiffs to speak.  Those allegations

---

[4] The Court recognizes Marco Island's interest in "orderly, efficient meetings" of city council.  *Rowe*, 358 F.3d at 803.  While the Rules do not limit discussion to certain topics, they do restrict Citizens' Comments in both time and form.  Rules §§ 2(f), 6, 7(c)(3); (Doc. 5-1 at 5, 8, 12) (limiting each speaker's comments to four (or eight) minutes and demanding decorum).  And the Court need not decide any limitation on immaterial topics.  Rule § 7(a)(3); (Doc. 5-1 at 9).  The speech here was at a city council meeting about the Councilor's conduct related to city council elections.  That topic is at least plausibly relevant to city council.

plausibly support the inference that the reason Plaintiffs were prevented from speaking was unconstitutional viewpoint discrimination.

Given the plausible violation of a clearly established constitutional right, the Court cannot dismiss the claim against Brechnitz based on qualified immunity.

**B.  *Monell*[5] Liability**

Moving onto the next Defendant, Marco Island contends the Complaint does not state a claim.  And the Court agrees.[6]

Claims against a governmental entity under § 1983 are limited.  *Monell*, 436 U.S. at 694.  "A plaintiff seeking to impose liability on a municipality for injuries its employees or agents have inflicted must show that the plaintiff suffered injuries inflicted pursuant to an official government policy or custom."  *Brown v. City of Hialeah*, 30 F.3d 1433, 1438 (11th Cir. 1994).  Liability under respondeat superior will not do—the plaintiff "must identify a municipal policy or custom that caused [her] injury."  *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (internal quotation marks and citation omitted).

Plaintiffs may establish a policy in one of two ways: "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker."  *Id.*  Because proof of an officially unconstitutional policy is like finding a unicorn, most plaintiffs "show that the [city] has a custom or practice of permitting [the conduct] and that the [city's] custom or practice is 'the moving force behind the constitutional violation.'"  *Id.* at 1330 (alteration accepted) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).  "A custom is a practice

---

[5] *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978).
[6] If the Complaint attempts to sue Brechnitz in his official capacity, this analysis applies equally to him.  *E.g.*, *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 n.2 (1997).

8

that is so settled and permanent that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Usually, evidence of "persistent and widespread practice" is necessary to show an unofficial custom. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (citation omitted). At the pleading stage, a plaintiff "must allege that a municipal policy caused a constitutional injury." *Worthy v. City of Phenix City, Ala.*, 930 F.3d 1206, 1220 n.1 (11th Cir. 2019) (alteration accepted); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1280 (11th Cir. 2016).

Here, there are no allegations Marco Island has any policy, custom, or practice violating First Amendment rights at city council meetings. Plaintiffs claim there is a custom because both Dayton and Seward were separately prevented from speaking. But the conduct occurred at the same meeting (seemingly minutes apart) because Brechnitz decided not to allow speech about the Councilor during Citizens' Comments that day. In other words, the allegedly unconstitutional conduct was a single instance. *See Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011) ("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality" over a long time.). The allegations of Brechnitz's conduct towards Plaintiffs at a single meeting cannot establish Marco Island has "practices so persistent and widespread as to practically have the force of law." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Nothing hints at any councilmember ever preventing citizens from speaking at other meetings. In fact, the allegations undercut Plaintiffs' position. The Complaint alleges "it is common practice during the Citizens' Comments section for speakers to make comments about City Councilors and to refer to council members by name." (Doc.

3 at 3). And at a later city council meeting, Brechnitz acknowledged he should have allowed Plaintiffs to speak. These allegations suggest there is no policy, custom, or practice of preventing citizen comments. Rather, this was an isolated incident where Plaintiffs could not speak once.

Thus, the Court concludes the Complaint failed to state a plausible claim for § 1983 liability against Marco Island.[7] So it is dismissed with leave to amend.

## C. Punitive Damages

Finally, Marco Island moves to strike the demand for punitive damages from the Complaint's wherefore clause. A "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Marco Island is correct that "punitive damages are not available under § 1983 from a municipality." *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Thus, to the extent that punitive damages are sought against Marco Island, the Court strikes the demand. *C.P. by & through Perez v. Collier Cty.*, 145 F. Supp. 3d 1085, 1092 (M.D. Fla. 2015).

But punitive damages may be recoverable against a government official sued individually. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Here, the Complaint does not specify whether it sues Brechnitz in his individual or official capacity. This is not necessarily fatal. *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1047 (11th Cir. 2008) ("Thus, while it is 'clearly preferable' that a plaintiff state explicitly in what capacity defendants are being sued, 'failure to do so is not fatal if the course of proceedings otherwise indicates that the defendant received sufficient notice.'" (citation

---

[7] Plaintiffs made no argument on a theory of single-incident liability, so it is not addressed here.

10

omitted)).  Based on the Complaint and briefing (i.e., the qualified immunity dispute), it appears the claim is against Brechnitz individually.  A punitive damage award, therefore, could stand against him individually after a proper showing.  *Wade*, 461 U.S. at 56.  So the Court does not strike the punitive damages demand entirely.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss and, Alternatively, Motion to Strike Portions of Plaintiffs' Complaint (Doc. 5) is **GRANTED and DENIED in part**.

2. The Complaint (Doc. 3) is **DISMISSED without prejudice**.

3. Plaintiffs must **FILE** an amended complaint **on or before June 9, 2020**. **Failure to file a timely amended complaint will result in the Court closing the case without further notice**.

**DONE** and **ORDERED** in Fort Myers, Florida this 26th day of May, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record