## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

REGINA L. DAYTON and RAY
SEWARD,

      Plaintiffs,

v.                              Case No: 2:20-cv-307-SPC-MRM

ERIK BRECHNITZ,

      Defendant.

_____/

## <u>OPINION AND ORDER</u>[1]

    Before the Court are Plaintiffs Regina Dayton and Ray Seward's Motion for Summary Judgment (Doc. 43) and Defendant Erik Brechnitz's Motion for Summary Judgment (Doc. 52). The parties responded and replied. (Docs. 48; 51; 53; 54).

    This is a case about the First Amendment, anonymous fake news, and small-town politics. But it turns out less eventful than that made-for-Netflix-binging headline. At bottom, the parties dispute whether qualified immunity applies. Because it does, Brechnitz is entitled to judgment. So the Court grants Brechnitz's Motion and denies Plaintiffs' Motion.

_____

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

## BACKGROUND

Plaintiffs went to the City of Marco Island's public City Council meeting. On the agenda was a segment called "Citizens' Comments."  During that time, the public can speak "on any subject matter not scheduled on the agenda." (Doc. 9 at 15).  After waiting in line, Plaintiffs each went to the podium to make statements about a City councilor (the "Councilor").

At the height of an election, anonymous individuals published a website (the "Site").  That site attacked local politicians, officials, and residents (including Seward).  The Councilor owned the site.  But when questioned about his connection to it during a Council meeting, the Councilor denied providing content.  Residents later discovered the Councilor was responsible for all the site's content.  The information came out as part of a state investigation, which was prompted by a complaint Dayton filed.  In general, Brechnitz knew Dayton lodged a complaint, and the state agency dismissed it.

When Dayton spoke about the Councilor by name, Brechnitz interrupted to tell her not to personally attack Councilmembers.  Dayton clarified she was not attacking anyone and Brechnitz let her continue.   Again, however, Brechnitz interrupted to limit Dayton from personally attacking the Councilor. There was some back and forth about Dayton's intent.  Afterward, Dayton continued speaking and sat down.  While Dayton was never asked to stop

speaking, she contends the interruptions stopped her from reading an entire prepared statement.

Later, Seward approached the podium.  He explained a Councilmember personally attacked and slandered him.  So Seward asked for Brechnitz's permission to confront the Councilmember.  The two went back and forth about whether Seward could do so during Citizens' Comments.  Ultimately, Seward said he would just sue the Councilmember and sat down.

Plaintiffs sued Brechnitz and the City.  At the pleading stage, the Court dismissed the City.  Now, Brechnitz wants summary judgment.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  If carried, the burden shifts onto the nonmoving party to point out a genuine dispute.  *Beard v. Banks*, 548 U.S. 521, 529 (2006).  At this stage,

courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

When (as here) the parties file cross summary judgment motions, these principles are unchanged. *Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). The only difference is that courts must take care to view the facts most favorably to the nonmovant for each motion. *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012).

## DISCUSSION

Before jumping into the merits, it is necessary to orient the analysis. So the Court handles several of Plaintiffs' arguments before turning to the claim.

## A. Unalleged Theories

As Brechnitz emphasizes, the only remaining claim is against him individually. Plaintiffs do not—and never did—challenge the constitutionality of the Rules. Yet Plaintiffs' unalleged contentions related to prior restraint and the unbridled discretion doctrine are misdirected efforts to do just that. So they are improper. *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012) ("It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase."). All the same, those theories are beside the point.

"A prior restraint on expression exists when the government can deny access to a forum for expression before the expression occurs." *United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000). "Permitting . . . and licensing ordinances . . . are classic examples of prior restraints." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1223 (11th Cir. 2017). Constitutional trouble arises when prior restraints grant officials unbridled (i.e., standardless) discretion to allow or prevent speech. *Id.* at 1220. "First Amendment concerns are inherent in such a scenario because the officials are left with unchecked power to engage in viewpoint discrimination." *Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115, 1124 (M.D. Fla. 2019). So would-be speakers may facially challenge the scheme. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988).

The conduct here was Brechnitz interrupting Plaintiffs' attempts to speak and telling them they could not personally attack Councilmembers. This was not a prior restraint. Nor are the Rules. Anyone can speak during Citizens' Comments without asking permission. Indeed, Plaintiffs spoke (or at least had the opportunity). Because the Rules regulate speech "only *after* it occurs," Brechnitz's conduct was not prior restraint; at most, it was a "subsequent punishment." *See Barrett*, 872 F.3d at 1223; 2 Rodney A. Smolla, *Smolla & Nimmer on Freedom of Speech*, § 15:9 (2021 update). It is unclear whether the unbridled discretion doctrine even applies outside the prior

5

restraint context. *Barrett*, 872 F.3d 1222.  Likewise, Plaintiffs do not explain holding Brechnitz individually liable for exercising prior restraint through unbridled discretion—a theory which permits parties to facially challenge licensing schemes.  Faced with qualified immunity (described below), Plaintiffs' argument for liability on unsettled law fails.  *See also Cooper v. Dillon*, 403 F.3d 1208, 1220 (11th Cir. 2005) (holding official had qualified immunity by acting under statute before it was declared unconstitutional).

With those theories disregarded, the Court turns to the properly presented claim.

## B. Alleged Cause of Action

Plaintiffs sue under 42 U.S.C. § 1983—alleging Brechnitz violated their First Amendment rights.  To succeed on this theory, plaintiff must show "(1) that the defendant deprived her of a right secured by the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998).  But a § 1983 plaintiff usually faces a significant obstacle: qualified immunity.  *E.g.*, *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008).  Plaintiffs can't clear that hurdle.

Qualified immunity protects government officials (sued individually) if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,*

6

457 U.S. 800, 818 (1982). For the doctrine to apply, the "official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up). Plaintiffs concede Brechnitz acted within his discretionary authority. (Doc. 43 at 15). So "the burden shifts [for Plaintiffs] to show that qualified immunity is not appropriate." *Ferraro*, 284 F.3d at 1194.

This analysis has two parts. *Id.* The first question is whether the facts—viewed most favorably to plaintiff—"show [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The other inquiry asks "whether the right was clearly established." *Id.* Courts may address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Because Plaintiffs cannot show a clearly established right, qualified immunity protects Brechnitz. *See Fuqua v. Turner*, 996 F.3d 1140, 1149-50 (11th Cir. 2021) (explaining why it is "often" preferable to skip to the second prong).

This "inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (cleaned up). The right's contours must be "sufficiently clear that every reasonable [official] would have understood that what he was doing violates the law." *Fuqua*, 996 F.3d at 1150. The official must have "fair warning" her conduct is unlawful. *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017) (citation omitted). "Put another way, in the light of

pre-existing law the unlawfulness must be apparent." *Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019) (cleaned up).

Plaintiffs cannot "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 745 (2011). Rather, "the clearly established law must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (cleaned up). That showing can be made in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016).

It is unclear by which method Plaintiffs intend to attack qualified immunity. They point to scant case law in their briefing (definitely nothing binding and indistinguishable). So the first manner is out. Nor was Brechnitz's conduct so egregious that it obviously or clearly violated the Constitution. *See Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) (explaining these are rare situations when constitutional provision is "so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful" (citation omitted)). That leaves only the second route.

It seems Plaintiffs contend broad First Amendment principles and the Rules permitting Citizens' Comments "on any subject matter," (Doc. 9 at 9)— taken together—clearly establish their right to speak without interruption or limit.  Like Brechnitz, the Court disagrees.  *See King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020) (A party taking this route "usually means qualified immunity is appropriate."); *Corbitt*, 929 F.3d at 1312.

For starters, it helps to know what happened.  So nothing gets lost in translation, here is the whole transcript of Dayton's remarks:

> [Brechnitz]:  So this is a time for anyone who wants to speak to the council on issues that are not on the printed agenda, and we have some speakers lined up.  The first one is Regina Dayton.

> [Dayton]: Councilors, I'm speaking before you tonight as an act of conscience and I implore you to believe that my comments are not meant to be in opposition to a person, but in support for what is right, for this is a sad set of circumstances for all of us to be involved in.  I once voted for [the Councilor] and there is no denying his intellect or the hours he devotes to city issues, but this is a different matter.

> *[Brechnitz]: If it's not going to be about a specific councilor—please do not name any councilors. That's not what this is about.  This is about policy issues. Talk to the council on things that are not on the agenda.  But if this is going to become an attack on someone—*

> [Dayton]:  Oh, no, sir, no, no.  And I think if you let me finish, you'll see that's—

> [Brechnitz]:  Okay.  Continue.

[Dayton]:  Clearly, [the Councilor] in his written response to the [state agency] now admits that he alone wrote the content of the [Site]—which many Marco Islanders found repulsive—after repeatedly denying this.  The passage of time does not (inaudible) that a lie is not a lie—

*[Brechnitz]:   Ms. Dayton, this sounds like an attack to me.*

[Dayton]:  It's not meant to be an attack, sir.

*[Brechnitz]:   Well, that's what it sounds like. I don't want you to attack any personal councilor up here.  If you want to attack us on policy, on issues, have at it.  But let's not—*

[Dayton]:  Well, then I think, sir—

*[Brechnitz]: —make it personal.*

[Dayton]:  No, no, my intent is not to make it personal.

*[Brechnitz]: But you are making it personal.  So let's not make it personal.*

[Dayton]:  All right.  Well, then let me try to rephrase some of this.

[Brechnitz]:  Please.

[Dayton]:  First, let me state that I am more than willing to discuss with any of you here tonight or anybody in the community the complaints that I have filed.  And I don't want any of you to believe that they are frivolous because they were well-intended, and they were founded on what I consider to be policy issues that were significant to the citizens of this community.

And I believe that you were right, Chair Brechnitz, when you wrote a letter expressing your outrage of the Law Enforcement Commission that basically exonerated a former police officer for abhorrent behavior.

Hence, I'm not so sure that you would have believed that some of the actions and the words of [the Site] as a policy issue were proper or correct.

I was going to ask humbly tonight since I realized that I have no authority over this that all of you consider a vote of no confidence for [the Councilor] because I wanted you to be the collective conscience of our community because I felt that the silence on this matter or a vote that would be 'no' would condone with a deafening roar what I consider to be amoral and inexcusable conduct because once you lose trust in your government, it's awfully difficult to regain it.

I felt that you had a solemn duty to reaffirm to your voters that common decency and honorable government still exists in [the City], and there is never an attempt—I would not want to be personally harmed or attacked.

I would never do that to any one of you sitting there; to anybody else that I come into contact with. I just believe that we are at a juncture in this community where political discourse and public discourse has to be returned to some sense of decency where personal kindness and professional integrity is demanded from our elected officials. And with that, I'll leave that.

[Brechnitz]: Thank you very much. The next speaker is Ken Honecker.

(Doc. 43-2 at 15-19) (emphasis added).

From that exchange (and the video), a few points are clear. Brechnitz did not cut Dayton's time short. Brechnitz did not ask Dayton to stop speaking. Brechnitz did not tell Dayton to sit down. Brechnitz did not raise his voice or

criticize Dayton.  Brechnitz did not threaten Dayton with removal or arrest.

Brechnitz allowed Dayton to keep speaking about the Councilor even using his

name.  And Brechnitz did not prevent Dayton from speaking in the future.

Brechnitz simply interrupted Dayton twice—telling her to stick to Council

policy matters and not personally attack Councilmembers on nonpolicy issues.

What's more, including the two interruptions, Dayton spoke for three minutes

and fifty seconds (ten seconds shorter than her allotted time).  In the end,

Dayton voluntarily sat down.

The later interaction between Brechnitz and Seward follows:

> [Seward]:  Good evening, Council.  My name is Ray Seward.  I've been a resident on the Island for 12 years.  I'm not here to attack anyone but I was attacked by one individual on this Council.  I was slandered and I was lied to and I feel I should have the right to confront that individual in public.  How do you feel, Mr. Chair?

> [Brechnitz]:  Not on this part of the agenda.  We don't attack people on the Council.

> [Seward]:  Even if they attacked me?  Slandered?

> [Brechnitz]:  This is not a debate, right?

> [Seward]:  I'm not here to debate.  I'm here to make a statement.

> [Brechnitz]:   No attacks on any Council members.  If you want to talk about our policies, have at it.

[Seward]:  If a Council member attacks me in a previous meeting—

[Brechnitz]:  I answered—the question's been answered, and the answer is—

[Seward]:  And so I have no recourse as a citizen of this Island; is that what you're saying?

[Brechnitz]:  I think you have lots of recourses as a citizen of the United States.

[Seward]:  Then maybe I should just get an attorney and file a lawsuit.

[Brechnitz]:  I'm not a lawyer and I can't make that kind of—give you that kind of advice.  I just don't want this portion of the agenda to become a session—

[Seward]:  This portion—

[Brechnitz]:  —where we attack council people.

[Seward]: This portion of the agenda is for the citizens of this Island—

[Brechnitz]:  To talk about items, not on the agenda.

[Seward]:  Exactly.  This was an article recently put in the newspaper.

[Brechnitz]:  Then if it's a newspaper article, I would suggest you write a letter to the editor.

[Seward]:  It wasn't the editor.  The newspaper reported on an individual Councilperson.  That Councilperson slandered me.  So what are you saying?  Why am I going to write a letter to the editor?  No problem.   I'll just contact an attorney and this

> individual can expect a letter from the attorney.
> Thank you.
>
> [Brechnitz]:  Thank you.

(Doc. 43-2 at 38-40).

The exchange began only when Seward asked Brechnitz how he felt about Seward's "right to confront [the Councilor] in public."² (Doc. 43-2 at 38). Even then, Brechnitz neither interrupted Seward nor asked him to stop speaking.  Brechnitz simply reiterated it was not appropriate to attack Councilmembers during Citizens' Comments.  And Seward sat down on his own.

On these facts and Plaintiffs' theory, it is not difficult to conclude a violation was not so clear that Brechnitz should have known his conduct was unlawful.  *See Crocker*, 995 F.3d at 1240-43.  The Rules themselves don't move the needle much.  Nor do broad statements of First Amendment jurisprudence. Here's why.

To start, the Rules do not support finding Plaintiffs had a clearly established right.  It is a balancing act to reconcile First Amendment rights with a government's interest in transacting its business at public meetings. *See White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) (noting

---

² According to Brechnitz, he did not know Seward was speaking about the Councilor.  Seward concedes that fact.  (Doc. 43 at 10).  Without knowing who Seward intended to discuss, however, it is unclear how Brechnitz could have possibly engaged in viewpoint discrimination.  All the same, if Brechnitz knew, the answer would be the same.

citizens have "enormous" interest to speak, but public meetings are "a governmental process with a governmental purpose"). The Rules bear this out. They encourage the public to "address City Council on any subject matter not scheduled on the agenda during the Citizens' Comments." (Doc. 9 at 15). But the Rules exist "to facilitate the transaction of business and promote cooperation and harmony." (Doc. 9 at 9). So speakers must "[a]ct with decorum" and limit their comments to four (or eight) minutes. (Doc. 9 at 10, 15). What's more, the Rules make several demands of Brechnitz—as Council chair. He must (1) "Conduct the meeting firmly and courteously while maintaining order at all times"; and (2) "Allow persons not on Council to speak only at designated times and may limit immaterial or redundant presentations or requests." (Doc. 9 at 13).

The Rules broadly allow the public to speak. Still there is some outer limit on relevance—at least in practice—allowing Brechnitz to limit speech (e.g., exclude immaterial topics).[3] As Dayton put it, if a speaker wanted to say something about a "turkey at the Marriott," which the "[C]ouncil can't control, that would be immaterial" and excludable. (Doc. 43-3 at 9). At bottom, the Council has a "significant governmental interest in conducting orderly,

---

[3] Almost every witness (including Plaintiffs) agreed. (Docs. 43-2 at 24-26; 43-3 at 9-10; 43-4 at 16-17; 43-5 at 6). While one former Councilmember believed citizens could speak on anything, that is an incorrect legal interpretation. (Doc. 43-6 at 29).

efficient meetings." *Rowe*, 358 F.3d at 803. And Brechnitz had discretion to control the meeting by excluding immaterial topics.[4] So the Rules themselves do not clearly establish Brechnitz could not interrupt Plaintiffs and limit personal attacks on Councilmembers. It is now clear Brechnitz did not admit to overstepping his authority and knowingly violating Plaintiffs' rights. At the pleading stage, those were key allegations to defeat qualified immunity. With those out and the conduct clarified, Brechnitz did not violate a clearly established right under the Rules.

Similarly, sweeping free speech principles do not clearly establish a right that Brechnitz violated. The First Amendment sets out a broad right—a state "shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I; *see City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 412 n.1 (1993). Of course, that right "is not absolute." *Ashcroft v. Am. Civ. Liberties Union*, 535 U.S. 564, 573 (2002). The "First Amendment does not guarantee persons the right to communicate their views 'at all times or in any manner that may be desired.'" *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989) (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981)). To guide the review of restrictions on speech, courts use forum

---

[4] Again, Plaintiffs failed to challenge the constitutionality of the Rule granting discretion.

analysis. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1236 (11th Cir. 2019).

All parties agree the Citizens' Comments session was a limited public forum. (Docs. 52 at 14; 53 at 12); *see also Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 802-03 (11th Cir. 2004); *Barrett,* 872 F.3d at 1225.[5]  This forum "exists where a government has reserved a forum for certain groups or for the discussion of certain topics." *Barrett,* 872 F.3d at 1224 (alteration accepted) (quoting *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2250 (2015)).  A limited public forum, therefore, is not "open to the public at large for discussion of any and all topics." *Id.*  Rather, it "can be set up to grant only 'selective access' to [the] class" for which it is reserved. *Id.* (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679-80 (1998)).  In other words, the government can discriminate based on content, so long as the restriction is viewpoint neutral and reasonable. *Id.* at 1225; *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995) ("The fact remains that limitations on speech at those meetings must be reasonable and viewpoint neutral, but that is all they need to be.").

---

[5] Some circuits inconsistently apply designated and limited public fora tests to local government meetings. *See, e.g.*, *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1202 (10th Cir. 2007).  Given the parties agreement, however, it is unnecessary to address that distinction.

Brechnitz did not clearly engage in unlawful viewpoint discrimination by simply telling Plaintiffs not to personally attack Councilmembers. Again, the standard for qualified immunity is crucial: "when a plaintiff relies on a general rule to show that the law is clearly established, it must apply with *obvious clarity* to the circumstances" (i.e., "the specific situation in question"). *Crocker*, 995 F.3d at 1240 (cleaned up); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established." (cleaned up)). Plaintiffs have not met that burden.

The law on decorum restrictions at government meetings is inherently fact dependent. And caselaw shows this is not an obvious clarity case. One circuit upheld decorum rules prohibiting personal attacks at local government meetings. *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 387 (4th Cir. 2008). *Steinburg* reasoned personal attacks can be irrelevant and derail the orderly conduct of a meeting. So "a content-neutral policy against personal attacks is not facially unconstitutional insofar as it is adopted and employed to serve the legitimate public interest in a limited forum of decorum and order." *Id.* Several cases reflect similar holdings. *Heyman*, 888 F.2d at 1332-34 (holding no First Amendment violation for limiting speaker to announced topic); *Cleveland v. City of Cocoa Beach, Fla.*, 221 F. App'x 875 (11th Cir. 2007) (restricting all political messages at council meetings during election

season was constitutional); *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427 (6th Cir. 2009) (upholding challenge to rule prohibiting "harassing" speech); *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274 (3d Cir. 2004) (affirming judgment for defendant who limited repetitive, irrelevant, and disruptive speech); *see also Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747 (5th Cir. 2010). Some cases cut the other way. *Ison v. Madison Loc. Sch. Bd.*, 3 F.4th 887 (6th Cir. 2021) (striking down rule prohibiting "personally directed" and "antagonistic" speech"); *Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010) (en banc) (expelling citizen who silently protested councilor with Nazi salute was triable as viewpoint discrimination).

The point of this is not to settle any constitutional questions. Quite the opposite, this discussion highlights Plaintiffs have not met their burden to show Brechnitz violated a clearly established right. To get qualified immunity, local officials need not make split-second parliamentary decorum rulings with lawyerly precision. *Heyman*, 888 F.2d at 1334. Instead, they must not engage in obvious viewpoint discrimination. *See Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006). What's more, governments have "a significant interest in maintaining civility and decorum during the public comment sessions of its public meetings, both to ensure the efficient conduct of the people's business and to maximize citizen participation in the discussion." *Steinburg*, 527 F.3d at 387. The purpose of Council meetings is not to air

personal grievances with Councilmembers; it is to conduct Council business. *See Rowe*, 358 F.3d at 803 ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand."). So merely telling speakers not to personally attack another meeting participant—then allowing them to keep speaking about the person—is not clearly established viewpoint discrimination.

Even if other cases might present closer calls, these facts do overcome qualified immunity. Brechnitz merely told Plaintiffs not to speak about matters he deemed immaterial to the Council's business. All the same, he allowed Plaintiffs (particularly Dayton) to speak. At bottom, an official instructing a speaker at government meeting to stay on a relevant topic does not violate a clearly established constitutional right. *See Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) ("It is particularly difficult to overcome the qualified immunity defense in the First Amendment context.").

Because Plaintiffs failed to meet their burden, Brechnitz has qualified immunity from suit.

Accordingly, it is now

**ORDERED:**

1. Plaintiffs' Motion for Partial Summary Judgment (Doc. 43) is **DENIED**.

2. Defendant's Motion for Summary Judgment (Doc. 52) is **GRANTED**.

3. Judgment is **ENTERED** for Defendants and against Plaintiffs.

4. The Clerk is **DIRECTED** to enter judgment, deny any pending motions as moot, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on November 5, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record